ROGER GOULD ET AL. *v.* MELLICK AND SEXTON
(AC 20228)

NORMAN KEITH ET AL. *v.* MELLICK AND SEXTON
(AC 20230)

Landau, Mihalakos and O'Connell, Js.

Argued January 22—officially released October 30, 2001

*Robert B. Cohen*, with whom were *Steven H. Solomson* and, on the brief, *James Stedronsky* and *Julia B. Morris*, for the appellants (plaintiffs in each case).

*David J. Robertson*, for the appellee (defendant in both cases).

*Opinion*

LANDAU, J. In these consolidated cases, the plaintiffs,[1] investors in a failed real estate development ven-

---

[1] The plaintiffs in the first case are Roger Gould, Gerard A. Thibert, Manage D. Nissanka, Srimathie L. Nissanka, A. Vandiveer Strait, Jr., Herman D. Marggraff, Jr., Daniel F. Shanahan, Merrill L. Nassau, Robert J. Miller, Leon M. Lehrer, Jan G. Lehrer, Michael W. Dzen, Jr., G. Richard Dundas, Lauren A. Daman, Mary Jean Sadlak, Hasmukh H. Shah, Thomas C. Morrier, Arthur Ashman, Lawrence J. Andrus, Marcia T. Andrus, Steven L. Bertone, David L. Griffith, Michele Griffith, Patrick J. Hallisey, Paul R. Mitchell, Grace P. Mitchell, Irene Petsa, Suresh M. Shah, Richard J. Shanahan, Margaret L. Shanahan, Albert E. St. Germain, Mary E. St. Germain, J. John Straub, Judith E. Straub, Eduardo M. Velez, Consuelo Velez, Patrick J. Fox, Michael W. Dzen, Sr., Susan J. Fox, Daniel Arutt and Barbara Arutt. We refer in this

ture, appeal from the summary judgments rendered in favor of the defendant, Mellick and Sexton, a law firm. On appeal, the plaintiffs claim that the court improperly granted the defendant's motions for summary judgment by concluding that (1) the absence of an attorney-client relationship was fatal to the plaintiffs' negligence claims and (2) the defendant was not a party to the escrow agreement. During oral argument before us, we raised the issue, sua sponte, of whether the trial court had authority to render summary judgment under the circumstances of these cases.[2] We conclude that the court lacked authority to render summary judgment in these circumstances and reverse the judgments of the trial court.[3]

These appeals concern the failure of a real estate development venture in which the plaintiffs lost significant sums of money. The defendant served as legal counsel to the general partner and special limited partner with respect to the sale of interests in Wildomar Square Associates Limited Partnership (Wildomar). The purpose of Wildomar was to develop thirty-two acres of real property in Rancho, California.

As in all motions for summary judgment, the facts at issue are those appropriately alleged in the pleadings.[4]

opinion to the first case as the *Gould* action.

The plaintiffs in the second case are Jonathan C. Keith, Ernesto G. Beltran, Mary Jane Beltran, Ronald P. Kapitan, Lucinda A. Kapitan, Linda M. Singer, Thomas J. Godar, Mary K. Godar, Carlo M. Buendo, Anne R. Buendo, Peter Roisman, Jeanne B. Merola, Paul R. Yoder, James Dougherty, Maureen A. Dougherty, Neil Roth, Kim D. Roth, Jack Vitaz, William P. McCauley, James W. Doyle, Laurence A. Lederman, Marion G. Lederman, Alfredo F. Nino, Louis D'Angelo and Eugene Lassere. We refer in this opinion to the second case as the *Keith* action.

[2] The parties submitted supplemental briefs to address our question.

[3] Initially, we questioned whether the court's judgments were final because they addressed only one of the legal or factual issues raised in each of the counts. We conclude that the judgments were final. Without a duty, there can be no cause of action in negligence. If the defendant was not a party to the escrow agreement, there can be no breach of contract claim.

[4] Each operative complaint contained three counts. The only counts at issue in the appeals sound in negligence and breach of contract, as the

*Plouffe* v. *New York, N.H. & H.R. Co.*, 160 Conn. 482, 488–89, 280 A.2d 359 (1971). Each count contained more than sixty paragraphs of allegations, not including subparagraphs. In summary, the plaintiffs alleged that the defendant was to ensure that the Wildomar offering and sale complied with securities regulations. To this end, the defendant prepared the private placement memorandum, various preliminary summaries of the offering, a tax opinion contained in the memorandum, a securities compliance opinion, investor notes, a partnership agreement, a subscription agreement, an escrow agreement, a July 26, 1989 loan and security agreement, and other documents needed to secure financing for Wildomar.

Wildomar expected to raise $4.5 million from the sale of forty-five limited partnership units at a cost of $100,000 each. To purchase a unit, a buyer had to pay $10,000 in cash on the date of subscription and to sign a promissory note in the amount of $90,000 to be delivered to Wildomar when it obtained additional funds in the amount of $4.05 million. The notes were to serve as collateral for the loan. Mechanics and Farmers Savings Bank, FSB (escrow agent), was to hold the cash and notes on behalf of the plaintiffs until all of the units were sold.

On the basis of the information and representations made in the placement memorandum, the plaintiffs understood that the escrow agent would not release the proceeds from the sale of the units until Wildomar had secured the $4.05 million loan. The plaintiffs also understood that if all of the units were not sold or if Wildomar could not obtain the $4.05 million loan, the cash and notes would be returned to them.

plaintiffs have not challenged the judgments rendered as to their claims under the Connecticut Uniform Securities Act, General Statutes § 36b-2 et seq.

Wildomar, however, was not able to sell forty-five units or to obtain the $4.05 million loan. Nonetheless, on or about July 26, 1989, Wildomar, acting through its general and special limited partners, and the defendant authorized the escrow agent to deliver the proceeds of the offering to Wildomar.

The Wildomar offering transaction was not consummated by the date (January, 1989) disclosed in the offering memorandum, and the closing date was extended. Consequently, Wildomar incurred additional debt. On or about July 26, 1989, Wildomar assigned some of the plaintiffs' notes in the aggregate amount of $2,047,500 to the escrow agent in return for a loan in that amount. The defendant held the balance of the notes, including notes executed by the plaintiffs, on behalf of Wildomar. With a loan of only $2,047,500, Wildomar did not have sufficient capital to achieve its purpose. Wildomar lost the real property, and the plaintiffs lost their investment. Without informing the plaintiffs, Wildomar, the general partner and the defendant released the funds in escrow, which were used to pay the fees of the general partner, its principals and the defendant. Wildomar and its general and limited partners paid the defendant fees that were twice the amount estimated in the offering memorandum.

The plaintiffs alleged that the offering memorandum, as drafted by the defendant, contained many representations of fact designed to encourage them to purchase units in Wildomar and that the statements were false statements of material facts.[5] As of July 26, 1989, the

---

[5] By way of example, the plaintiffs alleged, among other things, that the offering memorandum contained the following misrepresentations, among others: (1) Wildomar and its general partner have contracted and received an environmental report for the property; (2) the property would be rezoned for the intended commercial development as described by the end of 1989; and (3) if the general partner elected not to develop Wildomar, the real property would be sold by the end of 1989.

representations in the offering materials were false, and Wildomar failed to disclose numerous material facts to the plaintiffs. The plaintiffs further alleged that the defendant acted as legal counsel to Wildomar and provided assistance in connection with the offering and the release of the proceeds from the sale of the units, including the release of the notes from escrow. The plaintiffs did not know until July 15, 1991, that Wildomar had sought bankruptcy protection. The plaintiffs claim that the defendant fraudulently concealed from them the amount and extent of the debt and that the real property was in foreclosure.

With respect to the negligence counts, the plaintiffs alleged that the defendant knew or was reckless in not knowing that Wildomar was unable to comply with the terms of the offering memorandum and the escrow agreement. The defendant allegedly knew of false representations and omissions in the offering memorandum. The plaintiffs claimed that the defendant owed them a duty of care to ensure that Wildomar complied with securities regulations and that the statements in the offering memorandum were true and accurate. The plaintiffs further claimed that the defendant assisted in the release of the escrow funds and knew or was reckless in not knowing, as represented in the offering memorandum, that Wildomar was unable to secure a loan of $4.05 million, that zoning approval would not be available by the end of 1989, that the development of the property could not be completed by the end of 1990, that the real property could not be sold by the end of 1989 for a price equal to or greater than the price paid by the plaintiffs, that between the date of the offering memorandum and the date on which the funds in escrow were released there were numerous significant and material changes as to statements contained in the offering materials, that no more than thirty-five units had been sold and that Wildomar failed to comply with

certain regulations of the Securities and Exchange Commission.

The plaintiffs further alleged that the defendant owed them a duty of care and violated that duty by failing to inform them of the untrue and inaccurate statements in the offering memorandum and of the change of circumstances between the time of the offering memorandum and the closing of the partnership, by failing to issue a supplemental memorandum and by permitting the funds to be released from the escrow account.

As to the breach of contract claims, the plaintiffs alleged that they were third party beneficiaries of the escrow agreement and the defendant breached its obligation to them under the agreement. The purpose of the escrow agreement was to protect the plaintiffs by ensuring that the funds and notes were not released from the escrow account until all of the conditions of the offering memorandum were met. The escrow agreement provided that the escrow agent could not release the funds and notes until Wildomar and the defendant directed it to do so. The escrow agent was to be directed either to release the funds to Wildomar or to return them to the prospective purchasers, the plaintiffs. The plaintiffs claimed that as a result of the defendant's breach of its duty of care as to the offering memorandum and the escrow agreement, the plaintiffs suffered substantial damages.

In 1995, the two groups of plaintiffs commenced separate actions against the defendant.[6] Following some refinement of the pleadings and limited discovery, the defendant filed motions to strike the negligence and

[6] These parties have a prior history of litigation in federal court concerning the same subject matter. None of that history is relevant to our resolution of the issues on appeal here, except to note that the plaintiffs settled their claims against the general and special limited partners, who withdrew their attorney-client privilege, enabling the plaintiffs to obtain the defendant's files.

breach of contract counts. In its motions to strike,[7] the defendant claimed that the plaintiffs failed to state a cause of action (1) sounding in negligence because the defendant owed no duty to the plaintiffs as a matter of law or (2) sounding in contract because the defendant was not a party to the escrow agreement. In the *Gould* action, the trial court, *Barry, J.*, denied the motion to strike the negligence and breach of contract counts.[8]

[7] The defendant's motions to strike addressed other counts in the plaintiffs' complaints, but those issues are not relevant on appeal.

[8] Judge Barry based his decision in part on the rule our Supreme Court articulated in *Zamstein* v. *Marvasti*, 240 Conn. 549, 692 A.2d 781 (1997). "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. . . . We have stated that the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Citation omitted; internal quotation marks omitted.) Id., 558.

In applying the first prong of the *Zamstein* test, the court, citing *Dean* v. *Hershowitz*, 119 Conn. 398, 408, 177 A. 262 (1935), reasoned that the existence of a legal duty is not determined only by the existence of a contractual relationship between the parties, but that it may also arise in situations where there is no such relationship. The court concluded that the defendant was placed in such a position with regard to the plaintiffs and that a reasonable person would have recognized that the failure to use ordinary care and skill in preparing the offering memorandum would result in a loss for the plaintiffs.

As to the second prong of *Zamstein*, the court noted that courts look principally to whether the primary or direct purpose of the transaction was to benefit the third party. See *Krawczyk* v. *Stingle*, 208 Conn. 239, 245, 543 A.2d 733 (1988). The court noted that the plaintiffs were the intended beneficiaries of the defendant's services to Wildomar. The court also was mindful that "[a] central dimension of the attorney-client relationship is the attorney's duty of [e]ntire devotion to the interest of the client." (Internal quotation marks omitted.) Id., 246. A court must avoid "any rule that would interfere with the attorney's primary duty of robust representation of the interests of his or her client." (Internal quotation marks omitted.) *Jackson* v. *R.G. Whipple, Inc.*, 225 Conn. 705, 728, 627 A.2d 374 (1993). The court concluded, however, that the policy considerations involved in this litigation

The trial court, *Rittenband, J.*, in the *Keith* action also denied the motion to strike, adopting the reasoning of Judge Barry's decision in the *Gould* action. The plaintiffs did not amend their negligence and contract claims subsequent to the rulings on the motions to strike.

The cases were then consolidated and transferred to the complex litigation docket and came before the trial court, *Aurigemma, J.*, for scheduling purposes. During the scheduling conference, the court and the parties agreed that before the time and expense of discovery was undertaken, the parties should file cross motions for summary judgment. Only that portion of the defendant's motions for summary judgment claiming that the plaintiffs' negligence and contract counts failed to state causes of action because the defendant did not owe the plaintiffs a duty and because the defendant was not a party to the escrow agreement are relevant here.[9] The

would not be undermined by imposing liability under the factual circumstances of this case.

The trial court also denied the motion to strike the breach of contract count, concluding that under the allegations of the complaint, presented with proper evidence, a fact finder could conclude that there was a fiduciary relationship between the plaintiffs and the defendant and that it was a question of fact as to whether the defendant had breached that duty.

This appeal does not require us to determine whether the trial court properly denied the defendant's motion to strike, and we offer no opinion in that regard. The court's memorandum of decision, however, provides an informed view of the legal and factual issues involved in this case.

[9] Although the defendant's motions for summary judgment claimed that the plaintiffs' negligence and contract counts failed to state causes of action, the arguments put forth in its memorandum of law demonstrate that the defendant's claims stand on two different grounds. A motion to strike challenges the legal sufficiency of a complaint to state a cause of action. That is, assuming that the well pleaded facts are true, the court must determine whether Connecticut recognizes a cause of action based on the facts alleged. See *Quimby* v. *Kimberly Clark Corp.*, 28 Conn. App. 660, 664, 613 A.2d 838 (1992). With respect to the negligence counts, the defendant argued that Connecticut does not recognize a negligence action against an attorney brought by someone who is not a client. A motion to strike is the appropriate procedural vehicle for such a claim. As to the plaintiffs' contract actions, however, the defendant argued that the claims did not state causes of action because the defendant was not a party to the escrow agreement. That

court denied the plaintiffs' motions for summary judgment[10] and granted the defendant's motions for summary judgment.[11] The plaintiffs appealed.

During oral argument before this court, we announced our concerns as to the court's granting summary judgment with respect to only one issue raised in each of the counts. We thus ordered the parties to submit supplemental briefs addressing the question: "Did the trial court have the authority to render summary judgment under the circumstances of this case? See Practice Book §§ 17-44 through 17-50." In resolving these appeals, we are concerned only with the propriety of the court's granting of the motions for summary judgment under the factual and procedural posture here. We do not reach the merits of the positions that the parties took with respect to the defendant's motions for summary judgment.

We first set forth the applicable standard of review of a trial court's ruling on motions for summary judgment. "Summary judgment shall be rendered forthwith if the

argument does not attack the validity of the counts to state causes of action, but rather challenges whether one of the facts alleged is true, which invokes the standard for summary judgment, e.g., whether there are any genuine issues of material fact.

[10] The plaintiffs sought summary judgments as to the defendant's special defenses and the issue of whether the defendant may be liable as an aider and abetter under the Connecticut Uniform Securities Act, General Statutes § 36b-2 et seq. Those issues are not part of these appeals.

[11] Judge Aurigemma did not explain why she elected to rule on issues that previously had been determined. There was no material change in circumstances between the time the defendant's motions to strike were denied and the granting of its motions for summary judgment, which functioned essentially as a motion to strike. The law of the case is still a viable doctrine in this jurisdiction. See *State* v. *Casanova*, 255 Conn. 581, 589 n.8, 767 A.2d 1189 (2001); *Knoblaugh* v. *Marshall*, 64 Conn. App. 32, 36–37, 779 A.2d 218, cert. denied, 258 Conn. 916, 782 A.2d 1243 (2001), citing *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982) (" '[w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance' ").

pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995), quoting Practice Book § 384, now § 17-49. The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . *SLI International Corp.* v. *Crystal*, 236 Conn. 156, 163, 671 A.2d 813 (1996)." (Internal quotation marks omitted.) *Dept. of Social Services* v. *Saunders*, 247 Conn. 686, 696–97, 724 A.2d 1093 (1999). Where "[t]he trial court was presented with cross motions for summary judgment based on undisputed facts . . . our review is plenary and we must determine whether the court's conclusions are legally and logically correct and are supported by the record." (Internal quotation marks omitted.) Id., 697. In the present case, the trial court was presented with cross motions for summary judgment; however, the facts were disputed. Therein lies the procedural glitch.

Practice Book § 17-49 provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact *and* that the moving party is entitled to judgment as a matter of law." (Emphasis added.) "The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." (Internal quotation marks omitted.) *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430,

434, 429 A.2d 908 (1980). In ruling on a motion for summary judgment, the court must make two determinations: first, that there are no genuine issues of material fact; and second, that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49; *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 745, 660 A.2d 810 (1995).

"A motion for summary judgment must be supported and opposed by affidavits and other available documentary proof. . . . [A]ffidavits filed in connection with a motion for summary judgment must be made on personal knowledge, must set forth facts which would be admissible in evidence, and must show that the affiant is competent to testify to all matters stated in the affidavit. . . . Mere statements of legal conclusions or that an issue of fact does exist are not sufficient to raise the issue." (Citations omitted; internal quotation marks omitted.) *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 376–77, 260 A.2d 596 (1969).

In support of its motions for summary judgment, the defendant submitted numerous documents, including but not limited to the offering memorandum, a copy of the promissory note used by the purchasers, a map and an affidavit of Dorrance Sexton, Jr., an attorney licensed to practice in the state of Connecticut. The affidavit is two pages long, consisting of seven brief paragraphs. Sexton did not attest that he had personal knowledge of the matters stated in the affidavit or as to his relationship to the subject litigation or the parties. The affidavit concerns the investor subscriptions and the release of the escrow funds. Sexton reviewed the investor subscriptions to determine their purpose, was satisfied that they were received on behalf of Wildomar and directed the escrow agent to release the funds. The last paragraph of the affidavit is a conclusion and not an assertion of fact. The affidavit does not assert facts related to the plaintiffs' negligence claim.

In recent years, this court has noted that parties increasingly resort to motions for summary judgment when the proper procedural vehicle is a motion to strike. "There is a substantial difference between a motion for summary judgment and a motion to strike. The granting of a defendant's motion for summary judgment puts the plaintiff out of court as it did in this case. See Practice Book § 17-49. The granting of a motion to strike allows the plaintiff to replead his or her case. See Practice Book § 10-44." *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 38 n.3, 727 A.2d 204 (1999) (*Berdon, J.*, dissenting).

Some trial courts appear inclined to grant motions for summary judgment apparently because the parties agree to resolve their differences by means of a motion for summary judgment; see *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 32 n.17, 699 A.2d 964 (1997); although the rules of practice do not provide for it and the practice has not received explicit approval from this court; see *Burke* v. *Avitabile*, 32 Conn. App. 765, 630 A.2d 624, cert. denied, 228 Conn. 908, 634 A.2d 297 (1993);[12] or our Supreme Court. At the trial level, everyone seems eager to move the docket in this fashion until one of the parties discovers that it overestimated its position and brings an appeal stuck in the morass of a procedural quagmire.[13]

[12] In *Burke*, this court acknowledged that *Boucher Agency, Inc.* v. *Zimmer*, 160 Conn. 404, 409, 279 A.2d 540 (1971), suggests that a motion for summary judgment is the way to test the legal sufficiency of a complaint after the pleadings are closed. This court concluded, however, that *Boucher* is anomalous and limited to the unusual facts and procedural posture of that case. *Burke* v. *Avitabile*, supra, 32 Conn. App. 772 n.9. At the time *Boucher* was decided, a motion for summary judgment could be filed only when all of the pleadings were closed. Now, a motion for summary judgment can be filed at any time. In the context of the present appeals, this court notes that *Boucher* contains an interesting and informative historical discussion and differentiation between a judgment on the pleadings, a demurrer and a motion for summary judgment as they existed at that time. *Boucher Agency, Inc.* v. *Zimmer*, supra, 408–409.

[13] See *United Oil Co.* v. *Urban Redevelopment Commission*, supra, 158 Conn. 366. In *United Oil Co.*, our Supreme Court held: "This case is one of

In reviewing the history of summary judgment, it is easy to see its utility in avoiding the expense of litigation in cases where the factual issues are relatively simple, but generally it is an inappropriate way to conclude complex litigation. Summary judgment developed in the common law to meet the needs of the mercantile world. E. Stephenson, Connecticut Civil Procedure (3d Ed. 1997) § 100 (b), p. 293. "The old courts merchant provided an expeditious means of debt collection which were retained in the legal systems of the continent and then transplanted to Scotland. England yielded to the pressure and ultimately adapted an act entitled 'Summary Procedure on Bills of Exchange Act,' also known as Keatings Act, in 1855. Under this Act, the holder of a bill could obtain a writ granting him judgment unless the defendant filed an affidavit disclosing a good defense. The procedure was later extended to other actions involving simple issues answerable in unequivocable terms." Id., p. 294.

"Connecticut first adopted a rule allowing summary judgment in 1928. The procedure was allowed only when the damages claimed were in the nature of a 'debt,' as that term was used at common law, a liquidated sum arising from contract, a specialty, a judgment or a statute. It could also be used for the recovery of specific chattels and for certain routine actions involving real estate. The procedure was thus confined to actions where the evidence involved was substantially documentary, where issues could be simply named and where categorical answers were possible. Because the relief asked was a liquidated sum or was otherwise certain in form, final judgment could be entered on the

---

unusual complexity further complicated by the methods employed by the parties to secure an adjudication of the controversies among them—an action for a declaratory judgment decided on motions for summary judgment. Unfortunately, it serves as another illustration of the truism that a shortcut is not necessarily a more speedy and safe route than the established and traditional path." Id.

motion without need for further proceedings. . . . It was available to defendant as well as to plaintiff and required production of affidavits showing the factual basis of a claim or defense, not merely an honest belief that such existed." Id.

In ruling on a motion for summary judgment, the court must decide whether there is a genuine issue of material fact. If there are issues of fact, the court may not resolve them without giving the parties a full hearing. See *Town Bank & Trust Co.* v. *Benson,* 176 Conn. 304, 307, 407 A.2d 971 (1978); *McColl* v. *Pataky,* 160 Conn. 457, 459, 280 A.2d 146 (1971). Summary judgment is not appropriate in cases involving mixed questions of law and fact, such as negligence actions. *Spencer* v. *Good Earth Restaurant Corp.,* 164 Conn. 194, 198–99, 319 A.2d 403 (1972). Summary judgment should not be used in cases that are complex; *Miller* v. *United Technologies Corp.,* supra, 233 Conn. 752; in cases that concern important public issues or questions of inference as to motive or intent; *Nolan* v. *Borkowski,* 206 Conn. 495, 505, 538 A.2d 1031 (1988); see *Picataggio* v. *Romeo,* 36 Conn. App. 791, 793–94, 654 A.2d 382 (1995); or in ones that involve subjective feelings and reactions. *Connell* v. *Colwell,* 214 Conn. 242, 251, 571 A.2d 116 (1990); *United Oil Co.* v. *Urban Redevelopment Commission,* supra, 158 Conn. 375;[14] see E. Stephenson, Connecticut Civil Procedure, supra, § 100 (c), pp. 295–96.[15] Modern summary judgment procedure was adopted in Connecticut in 1963 and was modeled on the Federal Rules of Appellate Procedure. See *Plouffe* v. *New York, N.H. & H.R. Co.,* supra, 160 Conn. 487;

---

[14] "It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given to their testimony can be appraised." (Internal quotation marks omitted.) *United Oil Co.* v. *Urban Redevelopment Commission,* supra, 158 Conn. 376.

[15] The simple fact that these cases were consolidated on the complex litigation docket might have given the parties some indication that the claims were not appropriate for summary judgment.

*United Oil Co.* v. *Urban Redevelopment Commission,* supra, 376.

Although there may be instances where complex litigation may be resolved by means of summary judgment, the teachings of our Supreme Court instruct us that summary judgment is generally disfavored in complex cases. Because these appeals concern complicated financial transactions, the interpretation of various documents, the intent and motives of the parties as well as an issue of public policy, the trial court should not have resolved the dispute by means of summary judgment. Furthermore, our review of the documents and the court's memorandum of decision reveals that the court went beyond determining whether there were genuine issues of material fact and actually decided certain factual issues.[16] For these reasons, we reverse the judgments of the trial court.

The judgments are reversed and the cases are remanded for further proceedings.

In this opinion the other judges concurred.

---

[16] For example, the court found that the defendant took on no duties to the plaintiffs. The complaints allege that the defendant drafted the promissory notes that the purchasers of the units were required to sign. The court also found, on the basis of the language of the escrow agreement, that the defendant assumed no obligation to the plaintiffs. The plaintiffs alleged that the escrow account was for their benefit and the funds were not to be released until the defendant directed the escrow agent to release the funds.