[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT LIBERTY AUTO ELECTRIC COMPANY'S MOTION FOR SUMMARY JUDGMENT
Liberty Auto Electric Company ("Liberty"), one of several defendants in the above-captioned wrongful death case, seeks summary judgment on the ground that it owed no duty of care to the plaintiff's decedent. The plaintiff co-administrators of the estate of Anthony Esposito allege that the negligence of several parties who designed or constructed a service bay to house an automatic car wash assembly were negligent, and that their negligence was a proximate cause of Mr. Esposito being crushed by the car wash equipment when he entered the bay through a door that opened in the area of the moving equipment.
Liberty asserts in its motion that its role in the design and construction of the facility was limited and did not include the acts which the plaintiff alleges as a basis for its liability. The plaintiffs allege that Liberty was "a general contractor and/or electrical contractor for the purpose of making certain modifications and/or renovations to the existing gas station . . . in order to accommodate a car wash facility on premises." Their claims of negligence against this party' set forth in the third count of the July 15, 1997 amendment to the complaint are as follows: that Liberty or its agents, servants or employees
 a) constructed, caused, permitted and/or tolerated an exit and/or entry door to and from a new storage room to be located in such close proximity to said moving car wash machinery that it created a potentially hazardous condition for persons utilizing said storage room or seeking to enter or exit through said doorway;
 b) failed to construct said car wash facility so as to keep said area free from hazards likely to cause injury or death to persons lawfully within said area in that they failed to provide adequate guards or warning to persons lawfully in the car wash area that the car wash machinery would continue to operate despite its close proximity to the exit and/or entry door to and from the new storage room referred to hereinabove;
 c) failed to construct said car wash facility so that CT Page 16681 emergency or reset switches were easily accessible without exposure to the danger of moving machinery in close proximity thereto;
 d) caused the emergency and/or reset buttons for said machinery to be located in such a place as to require the use of said entry or exit doorway to the adjoining storage room in order to reach said buttons; and
 e) failed to provide sufficient room between the moving machinery and any exit or entry doorway so as to protect persons lawfully on the said premises from the dangers inherent in said moving machinery being so close to a doorway.
Liberty asserts in its motion that it is entitled to summary judgment because "there is no evidence that Liberty failed to perform the work within its control properly." In its brief, it argues that the positioning of the door and the reset switch and the inclusion of other safety features were not within the scope of its work, and that it therefore owed no duty to the plaintiff's decedent for these features and cannot be held liable.
Availability of summary judgment
The Connecticut Practice Book, at § 17-49, provides that summary judgment may be granted on a motion "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
In a recent case tried on the complex litigation docket at another location, the Appellate Court considered the availability of summary judgment in "complex cases." In that case, Gould v. Mellick Sexton,66 Conn. App. 542 (2001), investors in a failed real estate development venture brought a legal malpractice case against the defendant attorney, alleging negligence. The defendant law firm, which did not represent the plaintiffs, moved for summary judgment on the ground that it owned them no duty of care. As to a contract claim based on an escrow agreement, the defendant sought summary judgment on the ground that the plaintiffs failed to state a cause of action against it because it was not a party to the escrow agreement. The Appellate Court raised sua sponte the issue whether the trial court had authority to enter summary judgment and invited the parties to brief the issue, which had not been raised as a ground of the appeal. Gould v. Mellick Sexton, supra, 66 Conn. App. 551. CT Page 16682
Reversing the trial court's ruling granting summary judgment to the defendant, the Appellate Court stated that "[a]lthough there may be instances where complex litigation may be resolved by means of summary judgment, the teachings of our Supreme Court instruct us that summary judgment is generally disfavored in complex cases." Gould v. Mellick Sexton, 66 Conn. App. 557. This statement, read alone, might suggest a hiatus for use of the summary judgment device in complex cases. The practice book sections providing for summary judgment as a mechanism for resolving claims without trial do not state, however, that the procedure is unavailable in any particular kind of case or on any particular docket.
Since the Practice Book sections that provide for summary judgment on their face apply to all kinds of civil cases, without exception, and all civil dockets, the Gould ruling must be understood as a prediction that a party is unlikely to be able to satisfy the requirements of P.B. §§ 17-44 through 49, but not a bar to moving for summary judgment in a case that may be characterized as complex.
In fact, a careful scrutiny of the whole text of the decision in Gouldv. Mellick Sexton, supra, 66 Conn. App. 542, reveals that the actual basis for the Appellate Court's reversal of the granting of summary judgment was not the general unavailability of that procedure in complex cases, but rather that, in the opinion of the Appellate Court on plenary review, the defendants had not met the requirement of demonstrating the absence of a genuine dispute as to material facts. Just before its general observations about the limits of the use of summary judgment, the Appellate Court stated the ratio decidendi of its ruling: "[i]n the present case, the trial court was presented with cross motions for summary judgment; however, the facts were disputed. Therein lies the procedural glitch." Gould v. Mellick Sexton, supra, 66 Conn. App. 552.
The Appellate Court thus reversed the trial court's order granting the defendant's motion for summary judgment in Gould v. Mellick Sexton, supra, 66 Conn. App. 542, because the Appellate Court found that the movant had failed to show that the parties had no disagreement as to what the facts were, not because summary judgment is never available in complex cases. Where a transaction is multi-faceted or a relationship is complicated, it may certainly be difficult to demonstrate what the facts are, as there may be a great many material facts, and some of them may actually be in dispute.[1] This theoretical circumstance does not, however, doom to resolution by trial every claim that a party characterizes as complicated, nor does it mean that summary judgment motions may not be decided on their merits, according to the standards of Practice Book §§ 17-44 through 49 in complex cases. CT Page 16683
The court finds that the movant is not barred from moving for summary judgment.
Standard of review
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49; H.O.R.S.E. ofConnecticut v. Washington, 258 Conn. 553, 559 (2001); Alvarez v. NewHaven Register, Inc., 249 Conn. 709, 714 (1999); Nichols v. LighthouseRestaurant, Inc., 246 Conn. 156, 163 (1998); and Peerless Ins. Co. v.Gonzalez, 241 Conn. 476, 481 (1997); see Rivera v. Double ATransportation, Inc., 248 Conn. 21, 24 (1999); Sherwood v. DanburyHospital, 252 Conn. 193, 201 (2000).
The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact and that the demonstrated facts, under applicable principles of substantive law, entitle him to a judgment as a matter of law; and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. QSP, Inc. v. Aetna Casualty SuretyCo., 256 Conn. 343, 351 (2001); Appleton v. Board of Education,254 Conn. 205, 209 (2000); Rivera v. Double A Transportation, Inc., supra, 248 Conn. 24. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact."Witt v. St. Vincent's Medical Center, 252 Conn. 363, 373 n. 7 (2000).
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. Sherwood v. Danbury Hospital, supra, 252 Conn. 201; Serrano v.Burns, 248 Conn. 419, 424 (1999); Connell v. Colwell, 214 Conn. 242,246-47 (1990); Forte v. Citicorp Mortgage, Inc., 66 Conn. App. 475
(2001). In Connecticut, a directed verdict may be rendered only if, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 380 (1969); Vuono v. Eldred,155 Conn. 704, 705 (1967).
In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski, 206 Conn. 495, 500 (1998); Telescov. Telesco, 187 Conn. 715, 718 (1982). CT Page 16684
Are there issues of fact?
Liberty asserts that the undisputed facts establish that it had no role with regard to the conduct that is the basis for the plaintiff's claims of negligence against it: the placement of the door through which the plaintiff's decedent entered the facility in relation to the car wash equipment and the placement of the reset switch. It is undisputed that on the date at issue, Shell Oil Co. owned a gas station at 259 Main Avenue in Norwalk that it leased to South Sea Shell, and that Shell Oil Co. contracted with Liberty to make modifications to the gas station to accommodate a car wash facility in the third bay of the gas station, but that the car wash equipment itself was to be installed not by Liberty but by another defendant, Ryko Manufacturing Company ("Ryko"). Liberty has submitted portions of the testimony of David Smith, an engineer for Shell Oil Co. who testified that Shell Oil Co. furnished the plans for the modifications to Liberty and that Liberty modified the existing structure in conformity with those plans, without exercising any judgment as to the location of doors or the reset switch. Smith testified that the location of the emergency reset button and of the shutoff switch, also known as the "kill" switch, was on the plans furnished to Liberty, that these locations were not selected by Liberty, and that the switches actually installed were installed by Ryko, not Liberty. Brian Hulse, an employee of Liberty, testified that Shell Oil Co. and persons employed by it determined the dimensions of the bay and drew up the plans for the bay that was to contain a car wash apparatus.
In their opposition to Liberty's motion for summary judgment, the plaintiffs asserted that the facts are in dispute concerning the scope of Liberty's work and whether Liberty had authority to make changes in the construction plans for the sake of safety or other interests. The plaintiff submitted deposition testimony of Smith to the effect that Brian Hulse had made suggestions with regard to the location of doors in another part of the facility, and that Hulse did not have to seek authority from Shell through Smith in order to make changes in the plans he had been given by Shell:
 Q. [by plaintiff's counsel] . . . I'm asking you whether or not in order to make changes, he [Hulse] had to get your approval? That's a simple question, isn't it?
A. No. I mean my answer to that would be no.
Q. He could do what he wanted? CT Page 16685
A. Within reason, yes. That's why he was hired.
(Smith depo. p. 201.)
In his own deposition, Hulse testified that he and Smith, working together, had agreed to eliminate a different door, one that led directly into the area of a mechanical lift, because of the danger that a person might walk through the door directly into a car that might be on the lift. (Hulse depo. p. 30.) Hulse also testified that he was familiar with the dimensions of the Ryko car wash equipment that was to occupy the bay and that he was aware that in two other facilities on which he had worked in which doors opened near the car wash equipment, two and a half to three and a half feet separated the door from the equipment. Hulse also testified at his deposition to the effect that he had decided, in "a decision made between myself and Merly Construction" (Hulse depo. p. 137) how far to recess the door, without instructions from Shell or anyone else. He stated that "we put the door as far in as we could." (Hulse depo. p. 136.) When asked why, he responded that the purpose was to give clearance for the tracks of the car wash and the machine that ran on the tracks. (Hulse depo. p. 136.)
A trier of fact could make a reasonable inference, based on these responses, that Liberty had discretion to adjust the plans it was given by Shell in order to avoid hazardous conditions, and that it was within the scope of its work to make changes in the plans to enhance safety on the basis of its own analysis of the uses and hazards of the equipment to be used in the spaces under renovation.
The scope of Liberty's work and the extent to which Liberty was entrusted with making decisions and recommendations to enhance safety at the facility are all facts material to the plaintiff's claims against this defendant. The court finds that the facts are in dispute on that issue, and that summary judgment is precluded.
Standing of apportionment defendant to oppose motion
Defendant Ryko filed its own objection to Liberty's motion for summary judgment, and Shell Oil Company filed a pleading stating that it joins in Ryko's objection. Liberty asserts that neither of these parties has standing to object Liberty's motion for summary judgment as neither has made a claim against Liberty, though both have been sued by the plaintiffs. Because this court has found that the motion for summary judgment must be denied for the reasons stated above, it is not necessary to reach the issue whether parties who hope to reduce their own liability by asserting that an injury was caused solely or to some extent by other defendants have standing to object to dispositive motions that would CT Page 16686 affect apportionment of liability.
Conclusion
For the foregoing reasons, the motion for summary judgment is denied.
Beverly J. Hodgson Judge of the Superior Court