[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION FOR SUMMARY JUDGMENT
This action arises out of an automobile accident which occurred on February 27, 1999. The currently operative complaint, dated December 28, 2000, is in seven counts. The plaintiff, Christine Boscarino, has alleged CT Page 4643 that the accident was the fault of the defendant Joseph Jackson, the driver of the other car, and she has brought counts as well against New Testament Church of God ("local church"), Jackson's immediate employer and the registered owner of the car Jackson was driving at the time, and the Church of God International ("international church"), which allegedly selected Jackson as pastor of the local church and which allegedly had an ownership interest in the Jackson vehicle.
The first count of the complaint alleges that Jackson drove negligently and caused the accident. The second count alleges that at the time of the accident Jackson was operating in the course of agency or employment by the local church so that it is liable as a result of both common law and § 52-183 of the General Statutes. The third count alleges that at the time of the accident Jackson was performing duties in the employ of the local church and as such "served under the control and supervision of and as an agent for the [international church]" and the international church is therefore liable at common law and pursuant to § 52-183. The fourth count alleges recklessness on the part of Jackson. The fifth count seeks statutory damages pursuant to § 14-295 of the General Statutes. The sixth count alleges negligent supervision of Jackson by the local church, in that it allegedly failed to supervise Jackson with regard to a propensity to consume alcoholic beverages, as to which it had notice. The seventh count alleges the same sort of negligent supervision on the part of the international church, and specifically claims that at all relevant times Jackson "was employed and serving under the control, dictates and supervision" of the defendant international church.
The international church has moved for summary judgment, on the grounds, as to the third count, that it did not own the car and that, in any event, Jackson was not acting as its agent or employee at the time of the accident, and, as to the seventh count, that it did not supervise Jackson. Both parties submitted materials regarding the nature of the relationships between the local church and the international church and between both churches and Jackson. I have reviewed the materials and the authority submitted by the parties and I find that summary judgment is not appropriate in the circumstances of this case.
Summary judgment should be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Section 17-49 of the Practice Book. A material fact is one which will make a difference in the result. Barrett v. SouthernConnecticut Gas Company, 172 Conn. 362, 378 (1977). The movant has the burden of showing the absence of a genuine issue, and the evidence is to be viewed in the light most favorable to the nonmoving party. Hammer v.Lumberman's Mutual Casualty Company, 214 Conn. 573, 578 (1990). If the CT Page 4644 moving party successfully sustains its burden, the opposing party has the burden of presenting evidence to show that there is a genuine issue. It is not enough to state in conclusory fashion that an issue exists. Dailyv. New Britain Machine Company, 200 Conn. 562, 568 (1986). The motion should be granted if a verdict would be directed on the same evidence.Batick v. Seymour, 186 Conn. 632, 647 (1984).
The third count, it will be recalled, alleges that Jackson negligently caused the accident and injuries and that in performing his duties as pastor of the local church, he was acting under the control and supervision of and as an agent for the international church, and that the international church is therefore vicariously liable under both the common law and § 52-183 of the General Statutes. The international church has presented materials which show that the local church was the registered owner of the vehicle Further, the materials show that Jackson was at the time of the accident returning from a personal family visit on a Saturday and was, it is argued, not in the course of his employment at the time of the accident. As to the seventh count, alleging negligent supervision by the international church, it has introduced materials tending to show that the supervision exercised by the international church was at most ecclesiastical, according to the international church, and as such not an appropriate subject area for inquiry by the secular judicial system, and which tend to show that Jackson was hired by the local church and that the international church was not responsible for day to day operations or for direct supervision of Jackson.
In the context of the third count, I first consider the claim of agency pursuant to § 52-183[1] of the General Statutes. The statute has, of course, no application to this case unless the international church is deemed to be an owner of the vehicle. The local church quite plainly is the registered owner of the car. The rather substantial materials submitted in connection with the motion show a complex relationship between the local and international churches. The plaintiff claims, in essence, that the international church had asserted such control of the property of the local church that it had a cognizable ownership interest in the property. The international church argues that the interest was more analogous to a reversionary interest, in that its possession and control would not be effective in the absence of a triggering event such as a divisive split in the local church. The suggestion might be that the international church has no more ownership interest in the motor vehicle in issue than the holder of a security interest. The international church also suggests that the court ought not inquire into the nature of the relationship between the two organizations, because the court ought not venture into ecclesiastical issues.
First, I reject the notion that an inquiry into the nature of the CT Page 4645 ownership interest constitutes an impermissible invasion of the state into ecclesiastical issues. Although the corporate or business structure of a church organization may, to some degree, reflect its theology, it is not in itself theology, and neutral principles of secular law may be applied to parse incidents of ownership. See, e.g., Rosado v. BridgeportRoman Catholic Diocesan Corporation, 45 Conn. Sup. 397, 401 (1998) (Skolnick, J.).
Even so, I do not believe that the situation is so entirely clear that there is no issue of genuine fact as to the ownership interest. Although I do not believe that complexity alone is a sufficient reason to deny a motion for summary judgment, the language of Gould v. Mellick andSexton, 66 Conn. App. 542, 555-56 (2001), is nonetheless instructive. Where the nuances of language, the intent of the participants and the context within which the language was written may be germane, it would seem inappropriate to decide the issue by means of summary judgment.[2]
Even if the issue of ownership is not removed from the case, however, the issue still remains whether the presumption in § 52-183 is rebutted by irrefutable evidence inconsistent with agency at the time of the accident. The presumption has been the subject of a considerable number of cases, which are not entirely consistent. Several cases indicate that directed verdicts or summary judgments are generally foreclosed under § 52-183 of the General Statutes, on the reasoning that a plaintiff would otherwise be deprived of the benefit of the statutory presumption. See, e.g., Mitchell v. Resto, 157 Conn. 258, 264
(1968); Masse v. Joseph, 27 Conn. Sup. 206 (1967); Sutphen v. Hagelin,32 Conn. Sup. 158 (1975). Under this view, the statutory presumption is evidential in nature, and remains in the case for the fact-finder to consider regardless of the existence or nature of contradicting evidence.
A second set of cases holds that the presumption is, for lack of a better term, a version of a "vanishing presumption", that is, one which is operative until persuasive contrary evidence is introduced, at which point it ceases to be operative. These cases indicate that in order for the presumption to vanish, and a directed verdict or summary judgment thus to be a possibility, the trier must find proven facts which fairly put the issue in question. See Schimmelpfennig v. Cutler, 65 Conn. App. 388,392 (2001); Felsted v. Kimberly Auto Services, Inc., 25 Conn. App. 665,670 (1991). The central issue in this inquiry is what sort of evidence is needed in order for the presumption to disappear. It is clear that the presumption is not a true "vanishing presumption", which serves the practical purpose of eliminating the need for proof of an issue until any contrary evidence is introduced, at which point the party with the burden of proof no longer has the benefit of the presumption for any purpose. CT Page 4646
Our cases suggest that the presumption is a hybrid of sorts: the presumption ceases to have any effect only when the countervailing evidence is so strong that it cannot rationally be disbelieved. Bogartv. Tucker, 164 Conn. 277, 281-83 (1973); Koops v. Gregg, 130 Conn. 185
(1943). The rebutting evidence must be sufficient and persuasive.Anderson v. Nedovich, 19 Conn. App. 85 (1989). The language of the decisions, as well as underlying logic, suggest that if the presumption can be overcome only by evidence which the trier finds persuasive and not able rationally to be disbelieved, then the field is not fertile ground for summary judgment.
I have analyzed the presumption on the facts of this case by first assuming, for this purpose, that the international church is an owner. This of course may very well turn out not to be true, but, as noted above, I feel constrained to make that assumption at this point for the purpose of the motion for summary judgment. I then turn to the issue of agency. As a general proposition, of course, one can have permission to operate a car and at the same time not be an agent of the owner; the general test is whether the operator is performing some task for the owner's benefit at the time. See, e.g., Mastrilli v. Herz, 100 Conn. 702,704-05 (1924); Gutierrez v. Thorne, 13 Conn. App. 493, 498 (1988). The extent of what benefits the owner has been interpreted very broadly. For example, returning from a purely personal errand to the business of the employer has been found to be within the scope of agency, presumably because the return benefits the owner. Mastrilli, supra. Whether there is a deviation from employment is ordinarily a question of fact. Neville v.Adorno, 123 Conn. 395, 401 (1937).
A factual situation fairly similar to the facts in the case at hand arose in Atwell v. City of Middletown, 16 Conn. Sup. 395 (1949). There, the city's chief of the fire department was, at the time of the accident, driving a car owned by the city and provided for the chiefs full-time use. The chief considered himself always on duty, but at the time in question he was returning from a wedding reception and had designated a deputy to be acting chief for the time being. After atrial, the court found that the city had no liability because the chief was clearly on a pleasure trip.
The facts submitted in the case at hand show that the defendant Jackson was returning from a personal social visit with family on a Saturday. The plaintiff suggests that because a pastor is always on duty and, more specifically, because he was intending to work on the next day's service, Jackson was, under the broad interpretation of agency, performing something for the benefit of his employer at the time. Under the authority of cases such as Mastrilli, I cannot say for a certainty that a CT Page 4647 trier could not find that he was doing something tangentially for the benefit of his employer.
A final issue for resolution as to the presumption raised by the third count is whether there is any genuine issue of fact as to whether Jackson was acting for the benefit of the international church, even if he was in some way acting for the benefit of the local church. Again, I find the intricate relationship between the entities not to be clear enough to be resolved as a matter of summary judgment.
The above discussion disposes as well of the issue regarding the common law notion of agency. Although the evidence regarding agency is slim, I cannot find that there is no genuine issue of fact, as applied to the principles of law outlined above. Summary judgment as to the third count is, then, denied.
The seventh count may be resolved more summarily. That count it will be recalled, claims that the international church negligently supervised Jackson, and thereby caused injury to the plaintiff. The international church introduced materials tending to show that it was more a credentialing agency than an employer or supervisor, and that it did not directly hire or supervise personnel. The plaintiff introduced materials tending to show that the international church was the hiring and firing authority, directly or in a coordinating role, and that complaints were submitted to and resolved by it. One or more complaints related in some ways were pending before the international church at the time of the accident.[3] If the international church were only a licensing agency, then it presumably would not be liable any more than the grievance committee would be liable for the misdeeds of an attorney; if it were truly a supervising authority, then there may be substance to the claim. The facts of the relationship are disputed, and the resolution of the issue may depend on credibility and interpretations of the various documents, the historical contexts of the documents, and so forth. In short, the issue cannot be resolved on summary judgment.[4]
The motion for summary judgment is denied in its entirety.
____________________, J. Beach