473 So.2d 281 (1985)
MARRIOTT Corporation, a Corporation, and Liberty Mutual Insurance Company, a Corporation, Appellants, Cross-Appellees,
v.
The Travelers Indemnity Company, a Corporation, Appellee, Cross-Appellant, and
Commercial Union Insurance Co., a Corporation, Appellee.
No. AY-334.
District Court of Appeal of Florida, First District.
August 1, 1985.
*282 Herbert R. Kanning and Jack W. Shaw, Jr., of Mathews, Osborne, McNatt, Gobelman & Cobb, Jacksonville, for appellants, cross-appellees.
Bruce S. Bullock and W. Douglas Childs of Bullock, Childs, Mickler & Cohen, Jacksonville, for appellee Commercial.
Francis P. Conroy of Marks, Gray, Conroy & Gibbs, Jacksonville, for appellee, cross-appellant Travelers.
BARFIELD, Judge.
In this appeal the multiple parties to this action appeal and cross-appeal the trial court's determination of responsibility for payment of a settlement reached with the victim of an automobile accident. The issues on the appeal and cross-appeal are: 1) *283 whether the trial court erred in holding that Liberty Mutual's policy provided primary coverage; 2) whether the trial court erred in permitting insurers to seek subrogation and indemnity against their own insureds; 3) whether the trial court erred in awarding attorney's fees; 4) whether Marriott Corporation was entitled to judgment on the claims against it; 5) whether the trial court erred in not requiring Liberty Mutual and Commercial Union to indemnify Travelers.
The parties stipulated to the following facts:
Plaintiff, Travelers, had issued an automobile liability policy to Drake, the owner and lessor of a van to Amelia under a written lease agreement, which required that lessee, Amelia, (1) provide automobile liability insurance thereon at its own expense with a liability limit of $250,000 for one person (Amelia chose to be a "self insured"), and (2) indemnify and hold Drake harmless from any and all liability arising from the operation and use of said van, whether or not insured. Amelia had an agreement with Marriott for the operation of the Hotel Project at Amelia Plantation, which provided, among other things, that each of them would maintain (1) comprehensive general liability policies as to their respective operations, and (2) automobile liability insurance on motor vehicles (as to Amelia "owned or operated" in or about its activities and as to Marriott "owned and operated" in or about the Hotel Project.) Prior to July 12, 1975, Amelia had delivered possession and control of said van to Marriott for use in its operation of the Hotel Project. On that date the van was being operated by Peterson, an employee of Marriott, with its knowledge and consent and in the course of Peterson's employment by Marriott in the Hotel Project, when Peterson negligently operated the van into collision with a minor child, Cobb, such negligence proximately causing the injury and subsequent death of said minor. The estate of Cobb sued Drake and Travelers, Commercial, and Marriott and Liberty. On March 20, 1978, the case was agreed to be and thereafter was settled for $375,000, with Travelers paying $250,000, Commercial $62,500 and Liberty $62,500, each party reserving its rights.
Commercial had a comprehensive general liability policy insuring Amelia against contractual liability with a limit of $300,000, including an endorsement extending automobile liability insurance with a $100,000 limit for one person. Amelia is not a party to this suit because at a date subsequent to the accident involved it became a bankrupt.
Liberty had a comprehensive general liability policy insuring Marriott against contractual and legal liability arising out of the operation of the Hotel Project or of a motor vehicle (the van) in a limit of $300,000 for bodily injury for each occurrence.
Travelers seeks reimbursement from Marriott, Liberty and Commercial of the $250,000 paid, its attorney's fee and expense paid in defending the original action, interest on such payments and its attorney's fee in bringing this action.
Crossclaim
Commercial crossclaimed against Liberty and Marriott, seeking reimbursement for the $62,500 paid to the settlement, its attorney's fee paid in defending the original action and its attorney's fee in bringing the counterclaim.
The trial judge reviewed the five controlling documents (the lease, the management agreement, and the three insurance policies), and entered a final judgment on November 28, 1983, wherein he made the following findings and conclusions: 1. that the Travelers policy provides primary coverage; 2. that an endorsement of the Liberty Mutual policy provides primary coverage for "any automobile leased to the named insured (Marriott) under a long-term written contract ..." The trial court found this portion of the policy to be ambiguous and therefore construed it so as to provide coverage; 3. that the Commercial Union policy, by its terms, provides no coverage, *284 or alternatively, only excess coverage. The trial judge therefore ordered reimbursements among the insurers so that Travelers and Liberty shared the settlement equally and Commercial paid no amount thereof. He also awarded fees and costs to Travelers and Commercial Union form Liberty for the coverage dispute prior to institution of the lawsuit.
We reverse the finding that Liberty Mutual provided primary coverage; reverse the award of attorney fees; and reverse the failure to grant judgment for Marriott. We otherwise affirm the trial court. In reversing the finding that Liberty Mutual provided primary coverage, it should be noted, initially, that this court and another district court have rejected the rationale of Hartford Accident & Indemnity Co. v. Kellman, 375 So.2d 26 (Fla. 3d DCA 1979), cert. denied sub nom. Continental Casualty Co. v. Kellman, 385 So.2d 755 (Fla. 1980), which Travelers seeks to invoke to layer coverage according to a "hierarchy" of vicarious liabilities of the named insureds. In Allstate Insurance Co. v. Fowler, 455 So.2d 506 (Fla. 1st DCA 1984), this court rejected Kellman and held that where the insurers insure the same insured or insureds "in the same class" (i.e., entities vicariously liable), the provisions of the policies control priorities of coverage. Accord, Chicago Insurance Co. v. Soucy, 473 So.2d 683 (Fla. 4th DCA 1984). All three policies in this case contain identical language defining "persons insured" to include "any ... person using an owned or a hired automobile with the permission of the named insured ..." Since the van was a hired automobile as to the Commercial and Liberty policies and an owned auto under the Travelers policy, the van driver was an insured under all three. Provisions of the policies therefore control priorities.
The Liberty policy contained an endorsement providing primary insurance for "any automobile leased to (Marriott) under a long-term written contract." The trial court found this coverage ambiguous and therefore construed it so as to find coverage. We disagree. While the case law is clear that ambiguities must be construed against the insurer so as to find coverage, it is also clear that "[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite... . It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." Excelsior Insurance Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla. 1979); see also, Southeastern Fidelity Insurance Co. v. Suwannee Lumber Manufacturing Co., 411 So.2d 950 (Fla. 1st DCA 1982).
Cases relied on by the trial judge and the appellees in support of the "ambiguity" ruling are all far afield factually. There is no ambiguity in the present case. This is not a question of whether a written agreement is long-term. The undisputed facts in this case are that there was no written agreement by which Marriott leased the van. The Management Agreement was long-term, but it makes no mention whatsoever of vehicles. The trial judge may have been applying the "ambiguity" rule to the Management Agreement to find that some of the general "agreement to cooperate" language could encompass loan of the van, but this is a misapplication of the legal principle involved. The Hired Auto Endorsement to the Liberty policy was not applicable. The Comprehensive Auto Liability section thereof would apply. By its terms, Liberty is an excess insurer.
The argument that the trial judge allowed insurers to seek indemnity from their insureds is without merit. The insurers are not seeking indemnification from their insureds, but rather to subrogate to their insured's rights to seek indemnity from other insurers. To construe the pleadings otherwise would lead to the absurd result that once insurers agree to division of a settlement, there could be no litigation to establish priorities.
*285 It was error for the trial court to award attorney fees. Section 627.428(1), Florida Statutes (1975), does not authorize indemnification of attorney's fees from one insurer to another when both had a duty to defend. Argonaut Insurance Co. v. Maryland Casualty Co., 372 So.2d 960 (Fla. 3d DCA 1979). The case of American and Foreign Insurance Co. v. Avis Rent-A-Car System, 401 So.2d 855 (Fla. 1st DCA 1981), discussed by the parties in their briefs, is distinguishable and does not support an award of fees. In that case, the primary insurer (Avis) refused to participate in the underlying action, thus leaving the excess carrier to defend alone; obviously, all insurers participated in defense of the underlying claim below in the instant case. Moreover, Avis was apparently self-insured in that action and the prohibited reliance by an insurer on 627.428(1) was not an issue.
Travelers cannot rely on the lease of the vehicle to Amelia to recover fees. Amelia is bankrupt and not a party to the action, and Commercial's policy with Amelia excludes liability assumed under contract except an incidental contract, which the lease was not. Marriott and/or Liberty did not agree to indemnify Drake.
The trial court should have entered judgment for Marriott. The policy limits of the three insurers were more than adequate to satisfy the judgment. Travelers cites no authority for its contention that Marriott assumed Amelia's agreement to indemnify Drake when it took possession of the van, and we know of no grounds for such an obligation.
Travelers offers three theories in an effort to avoid its role as primary carrier. We find none convincing.
Travelers argues that since Amelia (now bankrupt) agreed to indemnify Travelers' named insured, Travelers' coverage was not available and Commercial's excess insurance clause therefore was inapplicable. Travelers offers no authority to support this unique theory, and its logic escapes us.
Next, Travelers maintains that the Management Agreement is a lease of premises, and therefore, an "incidental contract" for purposes of Commercial's and Liberty's general liability coverages. The agreement makes clear, however, that it is not a lease but creates a principal/agent relationship for management of the hotel facility.
Finally, Travelers contends that Marriott agreed to insure the vehicle and failed to do so. The agreement clearly states that Marriott agreed to insure vehicles it owned and operated. Since it did not own the van, this obligation did not apply. Amelia's promise to insure is of no comfort to Travelers, since Amelia is now bankrupt, and such an obligation is excluded by Commercial's policy.
We conclude that Travelers was the sole primary carrier and should pay its policy limit of $250,000 toward the settlement. According to the "Contribution by Limits" provisions of the Commercial and Liberty policies, the remaining $125,000 should be attributable to Commercial in the amount of $31,250 and to Liberty in the amount of $93,750. Each insurer should pay its own attorney's fees, and a judgment should be entered in favor of Marriott.
The decision of the trial court is REVERSED in part, AFFIRMED in part, and REMANDED to the trial court for entry of judgment consistent with this opinion.
ERVIN and WENTWORTH, JJ., concur.