[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT
Plaintiffs Arrow Electronics, Inc. and Schuylkill Metals of Plant City, Inc. ("Arrow") has moved for summary judgment on its claim that both defendant Federal Insurance Company ("Federal") and defendant National Union Fire Insurance Company of Pittsburgh PA ("National") had a duty under primary liability insurance policies to defend it with regard to a suit brought against it in 1991 by the federal Environmental Protection Agency ("EPA"). In its suit, the EPA alleged that Arrow and its wholly-owned subsidiary, Schuylkill Metals of Plant City, had polluted a site in Plant City, Florida. Arrow seeks summary judgment on counts 25 and 26 of its revised complaint, in which it alleges that pursuant to the terms of insurance policies issued by the defendants, each CT Page 199 owed Arrow a defense of the EPA action and each breached their contracts of insurance with Arrow by failing to provide it.
Both Federal and National filed special defenses alleging that they had no duty to defend or to pay costs of defense under the insurance policies because Arrow did not provide them immediately with the EPA's enforcement letter and civil complaint and, moreover, did not request a defense until several years after Arrow entered into a consent decree concluding the proceedings for which they now seek defense costs.
National filed a cross motion for partial summary judgment on the claim of duty to defend based on its ninth special defense, in which it alleged that Arrow failed to provide "timely, sufficient, and appropriate written notice of losses, claims, occurrences and/or suits, as required by the terms of National Union's policies" and that "such failure bars coverage under the policies." In its first special defense, National asserted: "[t]o the extent that all conditions precedent and subsequent to the triggering of . . . a duty to defend, if any, under National Union's policies at issue herein have not been fulfilled, National Union has no obligation to Plaintiffs."
National asserts that because of the failure of Arrow to provide it with the EPA enforcement letter and civil action immediately, National was deprived of the opportunity at the commencement of the EPA litigation either to provide a defense, defend under a reservation, or file a declaratory judgment action to obtain an adjudication whether it had a duty to defend.
Federal opposes the plaintiff's motion but filed no cross motion for summary judgment.
Standard of review for a motion for summary judgment
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49; H.O.R.S.E. ofConnecticut v. Town of Washington, 258 Conn. 553, 559 (2001); Alvarez v.New Haven Register, Inc., 249 Conn. 709, 714 (1999); Nichols v.Lighthouse Restaurant, Inc., 246 Conn. 156, 163 (1998); and PeerlessIns. Co. v. Gonzalez, 241 Conn. 476, 481 (1997); see Sherwood v. DanburyHospital, 252 Conn. 193, 201 (2000); Rivera v. Double A Transportation,Inc., 248 Conn. 21, 24 (1999).
The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact which, under applicable CT Page 200 principles of substantive law, entitles him to a judgment as a matter of law; and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. QSP, Inc. v. The Aetna Casualty Surety Co., 256 Conn. 343, 351,773 A.2d 906 (2001); Rivera v. Double A Transportation, Inc., supra,248 Conn. 24. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Witt v. St.Vincent's Medical Center, 252 Conn. 363, 372 n. 7 (2000).
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. Sherwood v. Danbury Hospital, supra, 252 Conn. 201; Serrano v.Burns, 248 Conn. 419, 424 (1999); Connell v. Colwell, 214 Conn. 242,246-47 (1990); Forte v. Citicorp Mortgage, Inc., 66 Conn. App. 475, 482
(2001). In Connecticut, a directed verdict may be rendered only if, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 380 (1969); Vuono v. Eldred,155 Conn. 704, 705 (1967).
In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski, 206 Conn. 495, 500 (1988); Telescov. Telesco, 187 Conn. 715, 718 (1982).
Availability of summary judgment
In a recent case tried on the complex litigation docket at another location, the Appellate Court considered the availability of summary judgment in "complex cases." In that case, Gould v. Mellick Sexton,66 Conn. App. 542 (2001), investors in a failed real estate development venture brought a legal malpractice case against the defendant attorney, alleging negligence. The defendant law firm, which had not represented the plaintiffs in the transaction at issue, moved for summary judgment on the ground that it owed them no duty of care. As to a contract claim based on an escrow agreement, the defendant sought summary judgment on the ground that the plaintiffs failed to state a cause of action against it because it was not a party to the escrow agreement. The Appellate Court raised sua sponte the issue whether the trial court had authority to enter summary judgment and invited the parties to brief the issue, which had not been raised as a ground of the appeal. Gould v. Mellick Sexton, supra, 66 Conn. App. 551. CT Page 201
Reversing the trial court's ruling granting summary judgment to the defendant, the Appellate Court stated that "[a]lthough there may be instances where complex litigation may be resolved by means of summary judgment, the teachings of our Supreme Court instruct us that summary judgment is generally disfavored in complex cases." Gould v. Mellick Sexton, 66 Conn. App. 557. This statement, read alone, might suggest a hiatus for the use of the summary judgment device in complex cases. The practice book sections providing for summary judgment as a mechanism for resolving claims without trial do not state, however, that the procedure is unavailable in any particular kind of case or on any particular docket.
Since the Practice Book sections that provide for summary judgment on their face apply to all kinds of civil cases, without exception, and to all civil dockets, the Gould ruling must be understood as a prediction that a party is unlikely to be able to satisfy the requirements of Practice Book §§ 17-44 through 49, but not a bar to moving for summary judgment in a case that may be characterized as complex.
In fact, a careful scrutiny of the whole text of the decision in Gouldv. Mellick Sexton, supra, 66 Conn. App. 542, reveals that the actual basis for the Appellate Court's reversal of the granting of summary judgment was not the general unavailability of that procedure in complex cases, but rather that, in the opinion of the Appellate Court on plenary review, the defendants had not met the requirement of demonstrating the absence of a genuine dispute as to material facts. Just before its general observations about the limits of the use of summary judgment, the Appellate Court stated the ratio decidendi of its ruling: "[i]n the present case, the trial court was presented with cross motions for summary judgment; however, the facts were disputed. Therein lies the procedural glitch." Gould v. Mellick Sexton, supra, 66 Conn. App. 552.
The Appellate Court thus reversed the trial court's order granting the defendant's motion for summary judgment in Gould v. Mellick Sexton, supra, 66 Conn. App. 542, because the Appellate Court found that the movant had failed to show that the parties had no disagreement as to what the facts were, not because summary judgment is never available in complex cases. Where a transaction is multi-faceted or a relationship is complicated, it may certainly be difficult to demonstrate what the facts are, as there may be a great many material facts, and some of them may actually be in dispute.[1] This theoretical circumstance does not, however, doom to resolution by trial every claim that a party characterizes as complicated, nor does it mean that summary judgment motions may not be decided on their merits, according to the standards of Practice Book §§ 17-44 through 49 in complex cases. CT Page 202
The court notes that in a complicated contract case, Levine v. Advest,Inc., 244 Conn. 732, 761 (1998), the Supreme Court faulted the trial court for denying a motion for summary judgment, and it approved the resolution by summary judgment of another declaratory judgment action concerning the application of an insurance policy in Peerless Ins. Co.v. Gonzalez, 241 Conn. 476, 489 (1997).
The court finds that the movants are not barred from moving for summary judgment.
Motions by and against National
The following material facts are not in dispute concerning the cross motions for summary judgment between the plaintiffs and National. The site at issue in the EPA enforcement action is located in Plant City, Florida. Plaintiff Schuylkill Metals of Plant City, Inc., is a Delaware corporation with its principal place of business in Melville, New York. (Revised complaint, para. 3.) That entity is a wholly-owned subsidiary of plaintiff Arrow, a New York corporation which had its principal place of business in Connecticut from approximately 1972 until 1987. In 1987, Arrow moved its home office to Melville, New York. National Union issued a primary general liability policy to Arrow effective February 1, 1982, through February 1, 1983, and another general liability policy effective from February 1, 1983, through March 31, 1983. Both policies contain the following provision:
 [T]he Company shall have the right and duty to defend any suit seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . .
The National policies provide, at paragraph 4(b), with regard to the duties of the insured, that "if a claim is made or suit brought against the insured, the insured shall immediately forward to the company every demand, notice, summons, or other process received by him or by his representative."
The National policies also provide, at paragraph 5: "[n]o action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy."
An endorsement to the National policy, Exhibit E, Bates page number A000187, attached to the affidavit of Robert Klatell, titled "Failure to Notify" provides that "The insured's rights will not be affected under this Policy if it fails to give notice of an accident or occurrence solely because it reasonably believed that the accident or occurrence was CT Page 203 not covered under the Policy."
By a letter dated August 16, 1990, Patrick Tobin, director of the waste management division of the federal Environmental Protection Agency sent to Robert Klatell, vice-president of Arrow, a letter notifying Arrow that "the EPA has documented the release or threatened release of hazardous substances, pollutants, or contaminants" at the Schuylkill Metals Corporation Site in Plant City, Florida. The EPA letter stated that "[t]his letter notifies you of the potential liability, as defined by Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607 (a), as amended, that Arrow Electronics, Inc. may have incurred with respect to the above-referenced site. . . . [and] potential response activities at the Site, which you may be asked to perform or finance at a later date. . . ."
On December 18, 1991, the federal government filed a complaint in federal district court for the middle district of Florida alleging CERCLA violations against Schuylkill Metals of Plant City, Inc. and Arrow. Arrow entered into a consent order with the EPA in 1992.[2]
Arrow has not filed in support of its motion or in opposition to National's motion any affidavit or other document asserting that it provided either a copy of the EPA letter or the complaint in the federal suit brought by the federal government to National prior to May 11, 1995. At his deposition, Arrow's general counsel, Robert Klatell, testified that he knew of no specific request by Arrow, written or oral, that National provide a defense to the EPA enforcement actions until May 1995. (Dep. pp. 54-57.) Klatell avers in his affidavit, at paragraph 31, that "It was not until approximately May of 1995 that I, or any other employee of Arrow, had reason to believe that the Plant City claim could be covered under any of the Federal or National Union primary policies."
Arrow has presented no evidence to establish that National was not prejudiced by Arrow's failure to notify it of the EPA action and suit until after Arrow entered into the consent decree.
It is undisputed that Arrow hired attorneys and incurred defense costs in connection with the EPA enforcement actions. No affidavit or other competent evidence submitted by either Arrow or National sets forth any facts that would allow a determination that Arrow has or has not incurred any defense costs since May 1995. The attempt of Arrow's counsel to testify himself at oral argument concerning ongoing or prospective defense costs cannot be considered by this court. No such information was submitted in the manner required by Practice Book § 17-45 and 46, that is, by affidavits under oath by competent witnesses. CT Page 204
National's claims concerning duty to defend
National asserts that it does not have an obligation to furnish Arrow with a defense of the EPA enforcement actions, or, more accurately, to reimburse Arrow for costs of defense undertaken before National was requested to provide a defense, because Arrow did not request a defense until May 1995, at least three years after Arrow asserts that it entered into a consent decree to settle the EPA suit in federal court. Arrow argues that requesting a defense is the same thing as giving notice to the insurer of the claim, and that because of an endorsement excusing late notice if the insured reasonably believed the policy did not provide coverage, it may recover defense costs even though it provided National no opportunity to provide it with a defense.
In determining the law to be applied in a case concerning rights and obligations under a liability policy, Connecticut courts analyze the interests identified at Section 193 of the Restatement (Second) of Conflict of Laws, which provides that unless another state has an overriding policy-based interest in the application of its law, the law of the state in which the insured risk is located should be applied."Reichhold Chemicals, Inc. v. Hartford Accident Indemnity Co.,252 Conn. 774, 778 (2000) ("Reichhold II"). See also ReichholdChemicals, Inc. v. Hartford Accident Indemnity Co., 243 Conn. 401, 414
(1997) ("Reichhold I"). In Reichhold II, supra, 252 Conn. 783, the Court stated that in deciding choice of laws, the trial court should apply the principle of depecage, by which different issues in a single case may be decided according to the substantive law of different states.
Section 193 of the Restatement (Second), supra, provides:
 The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles states in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.
The Supreme Court has also looked to § 6(2) of the Restatement (Second), supra:
 "Section 6(2) of the Restatement (Second), supra, CT Page 205 which is applicable to all substantive areas, sets forth seven overarching considerations in determining which state has the "most significant relationship': "(a) the need of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Reichhold Chemicals, Inc. v. Hartford Accident and Indemnity Co., supra, 243 Conn. 409.
 "The contacts to be taken into account in applying the principles of § 6 [of the Restatement (Second), supra,] to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." 1 Restatement (Second), supra, § 188(2).
Reichhold Chemicals, Inc. v. Hartford Accident and Indemnity Co., supra,252 Conn. 783.
In Reichhold II, supra, 252 Conn. 774, and the earlier appeal concerning the same case, Reichhold I, supra, 243 Conn. 401, the Connecticut Supreme Court determined that as to the issues of coverage and notice in a case involving coverage of a pollution cleanup, the law to be applied was the law of the location of the risk, not the law where the insured had its headquarters or where the insurance contract was entered into.
Arrow has cited a trial court opinion, QSP v. Aetna,1998 Conn. Super. LEXIS 3542, at *43 (Conn.Sup.Ct. Dec. 8, 1998), in which the court, Levin, J., found that the insured, a conglomerate with many business locations, and the insurer had no understanding as to the location of the insured site at the time of contracting. Judge Levin ruled before the Supreme Court had ruled in Reichhold II. In that case, as in the case now before this court, the insured owned sites in several states, and the insured's office at the time it entered into insurance contracts was in New York. In Reichhold II, the Connecticut Supreme Court reiterated its CT Page 206 determination in Reichhold I that the law of the site at issue in the claim for coverage was the proper law to apply. This recent analysis by the state's highest court counsels against application of the approach used in QSP v. Aetna, supra.
In the case before this court, the issue is which state's law applies to insurance policy provisions concerning a duty to provide a defense. With regard to National's motion for summary judgment, the court addresses the choice of law issues only with regard to that issue, and not with regard to the issues of coverage or notice of occurrences.
Arrow asserts that the Connecticut Supreme Court ruled in the twoReichhold cases cited above that a trial court is to apply Connecticut law if that law is not in conflict with the law associated with the state that has significant contacts to the controversy. Neither Reichhold case supports any such approach; rather, as is explained above, the Supreme Court requires an inquiry based on the considerations set forth in the Restatement (Second), supra.
National asserts that this court should apply Florida law on the issue of the duty to provide a defense.
There is little basis for applying Connecticut law. The insured risk is not located in Connecticut, and the administrative enforcement action and civil suit for which Arrow seeks payment of defense costs occurred in Florida. At the time the EPA wrote its letter and brought its suit, that is, the time a defense was needed, Arrow was not located in Connecticut but in New York.
After considering the factors found to be relevant in the Reichhold cases, this court determines that it should apply Florida law on the issue of the duty to provide a defense and the obligation of the insured to provide the insurer with notice that a defense is needed.
Florida case law provides that "[a]n unambiguous provision in a contract of insurance does not require construction, and must be given effect as written." Perrine Food Retailers v. Odyssey Ltd., 721 So.2d 402,403-404 (Fla.Dist.Ct.App.3d Dist. 1998); Midwest Mut. Ins. Co. v.Santestaban, 287 So.2d 665, 666-67 (Fla. 1973); Weldon v. All America.Life Ins. Co., 605 So.2d 911, 914 (Fla.Dist.Ct.App.2d Dist. 1992);Universal Underwriters Ins. Co. v. Fallaro, 597 So.2d 818, 819
(Fla.Dist.Ct.App.3d Dist. 1992); Morrison Assurance Co., Inc. v. City ofOpa-Locka, 389 So.2d 1079, 1080 (Fla.Dist.Ct.App.3d Dist. 1980). "Moreover, a reasonable and practical construction should apply in accord with the intention of the parties." See Lindheimer v. St. Paul Fire Marine Ins. Co., 643 So.2d 636, 638 (Fla.Dist.Ct.App.3d Dist. 1994). CT Page 207
Florida's Supreme Court has ruled that where an insured fails to give notice of the occurrence of a claim, the insurer is not liable to the insured for benefits under the policy unless the insured proves that the insurer was not prejudiced by the lack of notification of the claim.Bankers Insurance Company v. Macias, 475 So.2d 1216 (Fla. 1985). That court reversed an intermediate appeal court ruling that had allocated to the insurer the burden of proving that it had been prejudiced. Finding that the policy requirement of timely notice of a claim was a condition precedent to receipt of benefits under the policy, Florida's highest court ruled that an insured who had not notified the insurer of a claim but who brought a declaratory judgment action two years after the incident had the burden of proving no prejudice from what the court characterized as an unreasonable delay." Since the insured had presented no such evidence, the Supreme Court ruled that the trial court had properly entered judgment in favor of the insurer.
Several other rulings confirm that Florida's appellate courts enforce policy requirements that put on the insured the burden of requesting a defense or tendering legal process to the insurer. In Florida Farm BureauMutual Ins. Co. v. James, 608 So.2d 931 (Fla.Dist.Ct.App. 4th Dist. 1992), an insured was sued on a product liability claim that the insurer determined did not come within its coverage. At trial, the plaintiff amended its claim to an allegation of negligence. The insured never notified the insurer that the charge had been changed nor requested a defense as to the new claim. Florida's appellate court ruled that the insurer had no duty to monitor the case to see if a claim arose that was within its coverage, and that the insurer had no duty either to defend or to pay the judgment.
In Travelers Ins. Co. v. Jones, 422 So.2d 1000, 1003
(Fla.Dist.Ct.App. 4th Dist. 1982), the appellate court held that where an insured failed to forward legal process to the insurer, the insurer was not liable for bad faith in failing to defend, even though the insurer had some knowledge of the occurrence at issue in the suit. The appellate court applied an assumption that "[h]ad these suit papers been delivered to Travelers after service on [the insured] via United States Fire, we must assume Travelers would have complied with its contractual duty . . ." The appellate court reversed the trial court's ruling that notice of the occurrence was sufficient to trigger a duty to defend, even though Travelers had not actually received the legal process either from its assured or his agent.
A federal trial court applying Florida law ruled that where the insured never contacted the insurer after a claim was made against it, the insured had "failed to avail itself of the assistance of [the insurer] CT Page 208 and thereby abandoned its right to a defense by [the insurer.]" AmericanState Ins. Co. v. Pioneer Elect. Co., 85 F. Sup.2d 1337, 1343
(S.D.Fla. 2000). The court further ruled, citing Hartford Accident Indemnity Co. v. Gulf Ins. Co., 776 F.2d 1380 (7th
Cir. 1988), that because the insurer was unable to defend the insured because the insured had proceeded without requesting a defense, the insurer could not be held responsible for indemnifying the insured either. Id. The court relied on the statement in Solo Cup v.Federal Ins. Co., 619 F.2d 1178, 1183 (7th
Cir. 1980), that "[t]he defense obligation is triggered when the insured tenders the defense of an action against it which is potentially within the policy coverage."
Arrow asserts that policy provisions relevant to the duty to notify National of an occurrence or accident should govern the issue of provision of a defense. In fact, the insurance policies at issue contain separate provisions as to notification of a loss and request for a defense of a claim. The policy provides that in order to be entitled to a defense, the insured must "immediately forward to the company every demand, notice, summons, or other process received by him or by his representative." The duty is thus not simply to notify the insurer of the existence of a claim, but to forward the actual document in which the claim is made, whether an enforcement letter or complaint in a lawsuit, to the insurer. There is no evidence that Arrow did this until May 11, 1995.
The undisputed facts establish that Arrow failed to comply with the unambiguous requirement in the National policy that it forward demands and legal process to National immediately. This requirement is in aid of the policy term, set forth above, entitling National to "the right and duty to defend any suit seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . ." The right to defend includes a right to control the course of the defense of a claim, to decide on litigation strategy, and to limit the cost of the resolution. By proceeding to defend on its own, without forwarding the EPA letter or complaint to National, Arrow deprived National of its right to defend.
Arrow asserted at oral argument that even if it had not "immediately" forwarded to Nation the EPA letter and legal process, its May 11, 1995 communication entitled it to a defense from that day forward. Forwarding a demand letter or summons and complaint several years after they were received cannot, by any reasonable reading, be deemed to satisfy the requirement that the insured forward such items "immediately."
As has been explained above, Florida law imposes on an insured who CT Page 209 fails to comply with a condition precedent the duty of showing no prejudice to the insurer. Arrow has failed to present any evidence whatever to attempt to demonstrate that National was not prejudiced by being told of the EPA actions several years after the consent order was entered, when there was no possibility of providing a defense.
Arrow asserts, however, that it is excused from the operation of the condition precedent that required it to "immediately forward to the company every demand, notice, summons or other process received by him or his representative" (Ex. E, to Klatell affidavit, para. 4(b)) by the endorsement that provides "FAILURE TO NOTIFY. The insured's rights will not be affected under this Policy if it fails to give notice of an accident or occurrence solely because it reasonably believed that the accident or occurrence was not covered under this policy." National asserts that this endorsement applies, on its face, solely to an insured's failure to give notice of an accident or occurrence, a duty imposed at paragraph 4(a) of the policy[3] but not to its separate duty, set forth at paragraph 4(b) to "immediately forward to the company every demand, notice, summons or other process received by him or his representative."
On its face, the endorsement cited by Arrow makes no mention of any alteration of the insured's obligation to forward demands and legal process to National. Arrow asks this court to extend the actual wording of the endorsement, which on its face applies only to the condition precedent stated at paragraph 4(a) of the policy, to the separate duty to send the insurer demands or legal process received, a separate condition precedent imposed in paragraph 4(b).
It is the law of Florida that the legal effect of an insurance contract must be determined from the words of the entire contract, and courts may not violate the clear meaning to create an ambiguity. St. Paul GuardianIns. Co. v. The Canterbury School of Florida, Inc., 548 So.2d 1159, 1160
(Fla.Dist.Ct.App. 2nd Dist. 1989); Hoffman v. Robinson, 213 So.2d 267,268 (Fla.Dist.Ct.App.3d. Dist. 1968); Section 627.419(1) Fla. Stat. (1987). Florida courts have ruled that provisions in insurance policies cannot be read in isolation, St. Paul Guardian Ins. Co. v. The CanterburySchool of Florida, Inc., supra, 548 So.2d 1160. Courts may not rewrite an insurance contract or add meaning that is not present. St. Paul GuardianIns. Co. v. The Canterbury School of Florida, Inc., supra,548 So.2d 1159-60; Marriott Corp. v. Travelers Indem. Co., 473 So.2d 281,284 (Fla.Dist.Ct.App. 1st Dist. 1985). The fact that an insurance policy requires analysis to comprehend its scope does not mean that it is ambiguous. State Farm Fire Casualty Co. v. Metropolitan Dade County,639 So.2d 63, 66 (Fla.Dist.Ct.App. 3rd Dist.), review denied,649 So.2d 234 (Fla. 1994). Courts are not to put strained or unnatural CT Page 210 constructions on the terms of a policy in order to create uncertainty or ambiguity. Jefferson Insurance Company of New York v. Sea World ofFlorida, Inc., 586 So.2d 95, 97 (Fla.Dist.Ct.App. 5th Dist. 1991).
Paragraph 4 of the general liability insurance policy at issue clearly creates two conditions precedent: (1) giving notice of an incident or occurrence (Paragraph 4(a)) and (2) immediately forwarding demands and legal process to the insurer (Paragraph 4(b)). The endorsement invoked by Arrow refers only to failure to give notice of an accident or occurrence, the condition stated at paragraph 4(a), and none of its wording contains any suggestion that it excuses an insured from the separate obligation of immediately forwarding demands or suits to the insurer. According to the principles set forth above, the court is not free to expand the endorsement, as Arrow urges, to cover failure to send legal documents, since no such scope is expressed in the plain words of the endorsement.
The provisions of the insurance policy at issue are not ambiguous, and the court must give them their plain meaning. The endorsement invoked by Arrow does not apply to the condition precedent invoked by National, and the undisputed facts presented demonstrate that Arrow failed to forward immediately to National the EPA enforcement letter and lawsuit, as required by the policy.
For the foregoing reasons, the court finds that National is entitled to summary judgment on its defense of noncompliance with the condition of immediately forwarding a demand or legal process to it so that it could exercise its right to defend the claim. Arrow's motion for summary judgment on Count 26 of its revised complaint, in which it claims a breach of contract for failure to provide a defense, is denied.
The application of Connecticut law would yield no different result on the issue of enforcement of a condition precedent to the duty to defend.[4] It is well established in this state that an insurance policy is a contract, and it is to be construed in accordance with principles generally applicable to construction of contracts.Aetna Casualty Surety Co. v. CNA Ins. Co., 221 Conn. 779,786 (1992). The Connecticut Supreme Court has recently stated:
 settled principles also govern the interpretation of insurance policies. "It is the function of the court to construe the provisions of the contract of insurance . . . An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as CT Page 211 expressed in the language employed in the policy . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the words in the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." (Citation omitted; internal quotation marks omitted.) O'Brien v. United States Fidelity Guaranty Co., 235 Conn. 837, 842 . . . (1996); Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 583-84
. . . (1990).
 If, however, "the insurance coverage is defined in terms that are ambiguous, such ambiguity is . . . resolved against the insurance company. Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted." (Internal quotation marks omitted.) Hammer v. Lumberman's Mutual Casualty Co., supra, 214 Conn. 584.
Peerless Ins. Co. v. Gonzalez, supra, 241 Conn. 481-82.
The requirement to forward legal process to the insurer immediately is an unambiguous term in the National insurance policy. The undisputed facts establish that Arrow did not comply with this condition precedent.
For the foregoing reasons, National's motion for summary judgment as to Count 26 of the plaintiffs' revised complaint is granted, and plaintiff Arrow's motion for summary judgment on this count is denied.
Arrow's motion for summary judgment against Federal
At count twenty-five of the revised complaint, the plaintiffs allege that Federal breached its duty under its contract of insurance by its "failure to defend Plaintiffs and failure to reimburse Plaintiffs's investigation and defense costs with respect to the EPA claims and suit." The plaintiffs assert that as a consequence of the alleged breach of the duty to defend they suffered the costs not only of investigation and defense, but also the costs of settling the EPA claims. They allege that CT Page 212 the total costs of investigation, defense, and investigation are in excess of $24 million. (Revised complaint, Count 25, para. 216.)
Federal has filed no cross motion for summary judgment but takes the position that Arrow has failed to prove that it is entitled to judgment on the claim made in count 25 because it has failed to demonstrate that it complied with the requirement in all of the Federal primary commercial liability policies at issue that an insured immediately forward to it any demand or legal process received.
Undisputed facts as to Federal
By a letter dated August 16, 1990, the EPA notified Arrow that the EPA deemed Arrow to be a "potentially responsible party" under Section 107 of CERCLA, supra. The EPA commenced a civil action on December 18, 1991, against Arrow in the United States District Court for the Middle District of Florida to require Arrow to remedy pollution at the Schuylkill Metals Corporation site in Plant City, Florida. Arrow asserts that it entered into a consent order with the EPA in March 1991.[5] The primary liability policies issued by Federal to Arrow provide that
 If a claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.[6]
The Federal primary liability policies at issue also provide that Federal has a right to defend claims and that "[t]he insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident."
Merits of Arrow's motion for summary judgment
The court finds that Arrow's claim of breach of duty to defend against Federal are to be decided on the basis of Florida law, for the same reasons set forth above regarding Arrow's motion for partial summary judgment against National.
Arrow did not submit any affidavit in which any of its employees or representatives stated that the EPA letter or federal court complaint was sent to Federal on any particular date, nor has Arrow appended to its motion and brief any communication that it claims constitutes its compliance with the requirement to forward such documents to Federal immediately. Instead, Arrow asserts that it must have complied with the requirement to forward demands and legal process to Federal because CT Page 213 Michael A. Zuzich responded on behalf of Federal "as an excess carrier" in a letter dated March 7, 1991, that Federal's "Excess Liability policies do not extend or provide coverage for this matter. On this basis, we will be unable to undertake the handling of this matter, pay any expenses incurred, or pay any judgments, settlements or awards that may be achieved or rendered in this matter." Arrow takes the position that if it forwarded the documents to Federal in connection with a demand for coverage under an excess policy, the same communication served to satisfy the requirement in the primary liability policy written by Federal. Even if this assertion is accepted arguendo, Arrow's failure to submit the actual communications makes it impossible to determine whether it sent the enforcement letter and legal process immediately," as was required by the primary liability policy section quoted above. The Zuzich response concerning the excess policy is dated March 7, 1991, approximately eight months after the enforcement letter. Since the federal suit was not commenced until December 18, 1991, the Zuzich letter does not support any inference that Arrow communicated to Federal the need to defend a federal suit as well as an administrative enforcement proceeding.
Federal submitted an affidavit signed by Steven Jakubowski, a vice-president of Chubb Son, a division of Federal Insurance Company, who avers that Federal opened a claim file with regard to the Plant City site but that "[t]he claim file does not contain any written documents from any governmental agency regarding contamination at the Arrow Electronics facility at 402 South Woodrow Wilson Street, Plant City, Florida," that "Federal did not receive from Arrow Electronics, Inc. the Complaint that it has since learned that the Environmental Protection Agency filed against Arrow Electronics, Inc. in December 1991 with respect to the Arrow Electronics facility . . ." and that "[a]t no time did Federal Insurance Co. receive a request from Arrow Electronics, Inc. for a defense in the lawsuit. . . ."[7]
The inference urged by Arrow is thus opposed by the testimony of Mr. Jakubowski, which negates that inference.
Arrow invites the court to conclude that it satisfied the condition of forwarding the EPA's claim and lawsuit to Federal, a conclusion that cannot be reached without deciding a disputed issue of material fact. This court has not relied on the other affidavits submitted by Federal to which Arrow has filed an objection.
Arrow has failed to demonstrate that the undisputed facts establish that it complied with the requirements of the Federal primary liability policy related to the provision of a defense. It has further failed to demonstrate that the undisputed material facts establish that Federal CT Page 214 breached its duty to provide a defense to the EPA actions under the primary liability policies on which Arrow relies.
Conclusion
For the foregoing reasons, National's motion for summary judgment as to Count 26 of the plaintiffs' revised complaint is granted, and plaintiff Arrow's motion for summary judgment on this count is denied.
Arrow's motion for summary judgment on the claim it makes against Federal in Count 25 is denied.
Beverly J. Hodgson Judge of the Superior Court